William S. CLOUD, Fred B. Pfeiffer, Jesse R. Crossan, Cloud Machine Corporation and FMC Corporation, Plaintiffs,

v.

STANDARD PACKAGING CORPORATION, Defendant.

Civ. A. No. 60 C 1516.

United States District Court
N. D. Illinois, E. D.

Jan. 4, 1965.

Charles F. Meroni, John A. Gross, of Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., for plaintiffs.

Dana M. Raymond, Frederick C. Carver, of Brumbaugh, Free, Graves & Donohue, New York City, Albert W. Bicknell, Hibben, Noyes & Bicknell, Chicago, Ill., for defendant.

WHAM, District Judge.

FINDINGS OF FACT

1. Plaintiffs William S. Cloud, Fred B. Pfeiffer and Jesse R. Crossan, are citizens of the United States, Cloud being domiciled in the State of Illinois, Pfeiffer and Crossan being domiciled in Ohio:

2. Plaintiff Cloud Machine Corporation is a corporation of the State of

3. Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221.

Delaware, having its place of business in Skokie, Illinois.

3. Plaintiff Food Machinery Corporation, by change of name F M C Corporation, is a corporation of the State of Delaware operating a packaging division having its principal place of business at 4900 Summerdale Avenue, Philadelphia 24, Pennsylvania, as successor to Stokes & Smith Corporation.

4. Plaintiffs Fred B. Pfeiffer and Jesse R. Crossan are the title owners of record of the Pfeiffer Patent 2,486,760 in suit.

5. Plaintiff William S. Cloud is the title owner of record of William S. Cloud Patent 2,546,059 and Charles E. Cloud Patent 2,888,787 in suit.

6. Plaintiffs Cloud Machine Corporation and F M C Corporation are cross-licensed under the Pfeiffer Patent 2,-486,760 and under the Cloud Patents 2,-546,059 and 2,888,787 in suit.

7. All necessary parties have been named as plaintiffs, defendant having admitted that no indispensable parties have been omitted and that it does not question the authenticity of any of the title documents and agreements of plaintiffs.

8. Defendant Standard Packaging Corporation is a corporation of the State of Virginia having its main offices in New York City and a regular and established place of business at 1200 West Fullerton Avenue, Chicago, Illinois, within the jurisdiction of this court.

9. Jurisdiction is conferred on this court under the patent laws of the United States, 35 U.S.C. §§ 271, 281 et seq. and by 28 U.S.C. § 1338 and by diversity of citizenship, there being the requisite jurisdictional amount in controversy and the parties having admitted jurisdiction of this court.

10. This is an action for unfair competition and for infringements of three patents, namely:

(a) Pfeiffer Patent No. 2,486,760, original filed February 28, 1939, issued November 1, 1949 (hereinafter referred to as Pfeiffer '760 patent). Plaintiffs rely on claims 1, 2, and 3.

(b) Cloud Patent No. 2,546,059, filed August 24, 1946, issued March 20, 1951 (hereinafter referred to as Cloud '059 patent). Plaintiffs rely on claims 1, 2, 3 and 5.

(c) Cloud Patent No. 2,888,787, filed January 11, 1957, issued June 2, 1959 (hereinafter referred to as Cloud '787 patent). Plaintiffs rely on claims 8, 9, 10, 11, 14, 15, 16, 18, 19, 20, 21 and 22.

11. Defendant's accused machines identified as its 6–12 and 6–16 are covered by or marketed under its Mahaffy Patent 2,935,828 (hereinafter referred to as Mahaffy '828 patent) filed April 16, 1957 and issued November 1, 1960. All of plaintiffs' patents in suit are prior to Mahaffy '828 patent in point of time of filing and issuance.

12. The principal issues to be tried in this action are:

(a) Whether defendant's 6–12, 6–14 and 6–16 vacuum packaging machines, sold, leased or licensed by defendant, Standard Packaging Corporation, infringe any of the three patents in suit;

(b) whether each of the claims of the three patents in suit relied upon by plaintiffs is invalid for lack of invention;

(c) whether any of the claims of the three patents in suit relied upon by plaintiffs is invalid for failure to particularly point out and distinctly claim the invention disclosed in the patent, as required by 35 U.S.C. § 112;

(d) whether each of the claims of the Cloud '787 patent relied upon by plaintiffs is invalid by reason of the fact that the packaging machine disclosed therein was in public use and on sale within the meaning of 35 U.S.C. § 102(b) more than one year prior to the date of application for the patent; and

(e) whether there was any joint venture or confidential relationship between defendant and plaintiffs or any wrongdoing in the nature of betrayal of trust by defendant attending or following the inspection on April 7, 1955, by defendant's engineer, Reid Mahaffy, of the Cloud vacuum packaging process and

machine then located at the Ostrow plant in San Francisco and described in the Cloud '787 patent that was applied for more than eighteen months later on January 11, 1957.

13. During the forepart of the trial the Court, accompanied by counsel for both parties and the court reporter, visited the plant of Universal Tool Company in Chicago where a representative model 6–12 continuous vacuum packaging machine of defendant was observed by and explained to the Court and from which a dummy package was taken and offered in evidence as Plaintiffs' Exhibit 62; further evidence in the trial consisted of oral and written testimony, exhibits, and certain stipulations and admissions; also depositions read into the record.

14. Based upon the Court's inspection of said machine described in Finding 13 and consideration of the evidence and authorities and upon findings heretofore and hereinafter stated and upon conclusions which appear hereafter, the Court finds and concludes as follows:

(a) That both of the Cloud '059 and '787 patents here in suit and the claims thereof relied upon by the plaintiffs, as indicated in above Finding No. 10, are valid and infringed by defendant's accused machines identified herein as 6–12 and 6–16.

(b) That none of the three patents in suit is infringed by defendant's accused machine identified herein as machine 6–14.

(c) That Pfeiffer '760 patent is valid but neither it nor any of its claims are infringed by any of defendant's accused machines.

(d) That the evidence fails to establish or prove any joint venture or confidential relationship or relationship of trust attending or following inspection on April 7, 1955 by defendant's engineer Reid Mahaffy of the Cloud vacuum packaging process and machine then located by the Clouds at the Ostrow plant at San Francisco, California; that no such specified relationships grew out of subsequent meetings, conferences or communications between the parties.

(e) That from such inspection of the Cloud machine at Ostrow's by Reid Mahaffy he gained ideas, concepts and understanding of the method and process of continuous roll fed vacuum packaging followed by said machine that were by him communicated to the defendant and used or adapted by defendant in producing and completing their machines 6–12 and 6–16. In so far as the structure in defendant's machines 6–12 and 6–16 vary from the details of component parts of methods or processes disclosed and claimed in Cloud '059 and '787 patents the variations shown by the evidence such as in the heat sealing, the oscillating arms, registration and the adaptation to the films used by the defendant come within the range of equivalents to which plaintiffs are entitled for protection under their '059 and '787 patents.

(f) Since there was involved no betrayal of trust or confidential relationship there was no wrongdoing constituting unfair competition in using or adapting the ideas and concepts gained from the inspection of the Ostrow machine except in so far as infringements of Cloud '059 patent and the later '787 patent resulted. At the time of Mahaffy's inspection '059 was already published and '787 had not been applied for and was not applied for for more than a year thereafter. Defendant is responsible as an infringer or as a contributing infringer of Cloud '787 patent, though it was subsequently obtained, as well as of '059, in so far as these patents are found to be infringed by defendant's machines 6–12 and 6–16.

(g) That the use of the Cloud machine at Ostrow's was not a public or commercial use nor under lease or offer of lease but was an experimental and secret use which did not bar the issuance of Cloud '787 patent though the application therefor was made more than a year after the Cloud machine was put into experimental use at Ostrow's.

(h) That the use at Ostrow's did not cease to be experimental in character prior to one year before application for Cloud '787 patent was filed in the Patent Office.

(i) None of the claims in suit in Cloud '787 patent are invalid for failure to particularly point out and distinctly claim the invention in Cloud '787 patent.

15. On or about March 2, 1955 defendant learned through its California salesman Plumley that an experimental continuous vacuum packaging machine of Cloud, the plaintiff here, was to be tested in the meat and cheese packaging plant of Ostrow at San Francisco, California.

16. Defendant having learned of the intended installation of the Cloud experimental machine at Ostrow's and following its customary policy of keeping close watch on the development of packaging machines and the prospective market for packaging materials, sent their engineer Mahaffy to see their customer Ostrow and to see the Cloud machine, if permission could be obtained. Mahaffy arrived at Ostrow's plant on April 7, 1955, and a telephone call was made to William Cloud for permission for Ostrow to show the experimental machine to Mahaffy. Cloud gave such permission but there was no express or implied understanding or agreement between Cloud and Mahaffy. They discussed films and vacuum packaging. The defendant was the largest manufacturer or converter of packaging films in the United States and the evidence indicates that Cloud, Sr., hoped that from such inspection of his machine at Ostrow's the defendant might be able to supply or develop a better film for his machine than the Pliofilm he had used up to that date.

17. At a subsequent time a meeting was arranged through Mahaffy between Cloud, Sr. and officials and employees of the defendant to be held at the Ambassador West Hotel in Chicago on April 18, 1955 during the packaging show in Chicago. Out of such meeting no further understanding, express or implied, developed and no relationship of trust or confidence was established at such meeting or at such further meetings and conferences that occurred thereafter.

18. In his inspection of the Cloud machine at Ostrow's Mahaffy observed that it was using and was adapted to use Pliofilm and after such inspection he knew of no other film which would result in better packaging that could be used on the Cloud machine which he inspected. No such better film which the defendant believed could be used on said Cloud machine was later developed or learned about by the defendant, though in June, 1956, at plaintiff Cloud's request, defendant shipped newly-developed film to Cloud for experimental use on the Cloud machine.

19. Defendant did not fail to keep any promise or comply with any arrangement between Cloud and defendant with reference to supplying a better film in so far as it lay within its power which would be usable on the Cloud machine seen by Mahaffy at Ostrow's.

20. The Cloud experimental machine is disclosed in Charles Cloud Patent 2,-888,787 which was not applied for until January 11, 1957 and is shown in the first form of the invention, illustrated in Figures 1 to 16 of the patent, wherein an adhesive tape closes a vacuum applying slit in the package.

21. The later Cloud machine was a second and different version of a continuous vacuum stretch-wrap packaging machine, (Project 13), constructed in the machine development shop of Cloud-Curtiss Development Corporation, (by change of name Cloud Machine Corporation) located in the Chicago plant of Curtiss Candy Company, and operated by plaintiff William Cloud, father of the patentee Charles Cloud.

22. While the Cloud machine had useful general application in the packaging field it was evident to the Clouds that if the machine could be successfully adapted for packaging meat and cheese there would be a much greater field of use of the method and machine. Hence,

Cloud decided to and did ship the machine to California, in the forepart of March, 1955, to the packaging shop of Ostrow with whom Cloud arranged to have the machine experimentally operated by Cloud's employee Roselle who made periodic reports to Cloud.

23. During the time the Cloud machine was in the Ostrow plant it was the sole property and under the control of Cloud the entire time; and Ostrow had at no time any rights by lease or otherwise in such machine and no right to display the machine to anyone for examination except by Cloud's consent. The machine was ultimately returned in 1956 to Cloud in Chicago because the application of it to packaging meat and cheese did not prove to be successful.

24. The Cloud machine was installed at the Ostrow plant in 1955 on the same floor and in the same room where defendant's vacuum packaging machines were in operation but it was not disclosed to public inspection and examination.

25. During the year 1955, and more than one year prior to the filing date of the Cloud '787 patent on January 11, 1957, the Cloud machine at the Ostrow plant produced 50,000 packages that were sold by Ostrow in retail food stores in the San Francisco area in furtherance of the experimental use of the machine from which neither the Clouds nor any of the plaintiffs received any rentals or profits or expected to.

26. In the experimental packaging on the Cloud machine at Ostrow's it was necessary to send out thousands of vacuum packaged products to the stores marketing such products so as to obtain results, over a period of time, on so-called "shelf life" of the products. Many were returned as "leakers" and as being unsatisfactory. The results of the tests proved so unsatisfactory that Ostrow eventually stopped using the machine and Cloud asked him to return the machine.

27. Defendant's public use defense must also fail since the method claims of Cloud '787 patent in suit are restricted to the second form of the Cloud invention in which the evacuating aperture is in the peripheral seal.

28. Defendant did not have, ahead of or in April, 1955, any drawings or models showing a vacuum packaging machine or part of a machine with an oscillating mechanism movable in the direction of rotation of a cup in which a package was formed and then returning for cooperation with a succeeding cup; nor did defendant have, before Mahaffy's trip of March 28, 1955, any drawings of a machine with a continuously rotating drum.

29. No evidence or testimony was offered by defendant, its patentee witness Young, or anyone else from defendant's engineering and/or research departments that defendant followed any prior art teaching or machine in developing and building its continuous stretch wrap packaging machine wherein a vacuum head was swung back and forth over a continuously advancing series of forming cups or molds.

30. Defendant's 6–12 and 6–16 machines are covered by or marketed under its Mahaffy '828 patent. Defendant supplies to the trade in the United States the majority of vacuum packaging machines in which two films are supplied from roll stock, one film being heated and formed by suction and the two films being heat sealed around the formed portion of the film.

31. The Cloud '787 patent relates to a complex apparatus and method useful for vacuum packaging.

32. The Cloud '787 patent discloses two forms of evacuation and healing systems, the first being the so-called "scotch tape" system of Figures 12 to 16 wherein the cover film is slit and a label with a sticky surface is placed between the material being packaged and the cover film, to seal this slit when the package is evacuated; and the second form being the so-called peripheral seal eliminating the use of the "scotch tape" and creating the seal by the two package forming films alone as illustrated in Figures 17 to 21 of the patent drawings.

33. All of the method claims of the Cloud '787 patent in suit are directed to the peripheral seal method of the patent.

34. The machines using the method of the claims in suit of the Cloud '787 patent were successfully used by the Clouds for the packaging of cheese and other products after the application for Cloud '787 patent was filed.

35. The Cloud '059 patent in suit, relates to a packaging machine and method for maintaining proper registration of indicia on a plastic sheet relative to articles being packaged.

36. In the illustrated embodiment of Cloud '059 patent, roll stock of heat stretchable material is lapped around a pocketed drum so that the film will span the pockets. The film is heated on the drum, sucked into the pockets to line the same and the film lined pockets are filled with material to be packaged. A cover film preferably containing repeated printed matter is unwound from the second roll, passed over heated fins radiating from a roll and then passed between drive rolls. These drive rolls are controlled by an electric eye arrangement which senses whether or not the printing is fed into proper registration with the package and triggers feed mechanism to correct errors by varying the stretch of the film. The fins heat the film across its entire width so that it can be easily stretched.

37. In the illustrated disclosure of the Pfeiffer '760 patent thermoplastic film is anchored over the mouth of the cup mold, the film is heated and sucked into the mold, the article to be packaged is placed in the film lined mold, covered with a second film and the second film is sealed to the periphery of the cupped film. Air is exhausted from the package through an evacuation tube and the film tightly adheres to the article.

38. The Pfeiffer '760 patent is not adapted for use in the rapid production of 3-D packaging of foodstuffs for which the Cloud patents and the Mahaffy patent and the machines constructed thereunder are designed and if any of the methods and claims of the Pfeiffer patent are thereby made use of by defendant's machines, it is only an isolated part standing alone and from a practical standpoint there has been no infringement of the Pfeiffer patent by defendant and the complaint must be dismissed in so far as the claims of infringement are based upon the Pfeiffer patent. Pfeiffer '760 gives no monopoly on film stretching and sealing into evacuated packages.

39. The seventeen reference patents relied upon by defendant to establish invalidity of the claims of the three patents in suit neither singly nor in combination anticipate any of these claims.

40. Defendant has submitted no evidence showing how any of the seventeen patents which it relies upon in anticipation for the claims in suit can be combined.

41. The method claims in the Cloud patents in suit are not anticipated by bits and parts of machines of unrelated patents of the prior art.

42. The Pfeiffer '760 patent; the Cloud '059 patent; and the Cloud '787 patent in suit were lawfully issued by the Patent Office and are presumed to be valid. The burden of proving invalidity of the patents and claims in suit is upon defendant and defendant has not met this burden.

43. At the trial plaintiffs selected claims 8 and 20 of Cloud '787 patent as being representative of the claims alleged to be infringed by defendant's machines.

44. Claim 8 of Cloud '787 patent is a method claim setting forth twelve steps each of which is used in the operation of defendant's 6–12 and 6–16 machines embodying an evacuation head moving successively with a set of sequential cups and returning to a subsequent cup cavity after the package is evacuated and sealed.

45. Claim 20 of Cloud '787 patent is a method claim setting forth nine steps each of which is used in the operation of defendant's 6–12 and 6–16 machines embodying application of a suc-

tion head to a cupped package formed from two films, one of which is heat stretched into the cup and sealed to a cover film around most of the periphery of the cup, for the purpose of evacuating and sealing the package.

46. Claims 9, 10, 11, 14, 15, 16, 18, 19, 21 and 22 of the Cloud '787 patent are method claims setting forth steps each of which is used in the operation of defendant's 6–12 and 6–16 machines. Some of these claims set forth one or more steps which are used in certain steps in the operation of defendant's 6–14 machine but the 6–14 machine does not follow the methods of the Cloud patents in its intermittent packaging operation.

47. Claim 8 of the Cloud '787 patent is representative of those claims in suit directed to the oscillation of the vacuum evacuation head over the advancing cup cavities in the heat stretchable plastic film. This enables the head to be first advanced over a given cavity and then be reversed in the direction of movement for application to a subsequent cavity all without interrupting the continuous advance of the plastic film. It is this feature which contributes so much to the enhancement of the speed of the packaging operation and consequent savings.

48. In the machine of the Cloud '787 patent method steps are accomplished by the use of an oscillating or rocker arm which carries an evacuation head and which swings back and forth about the axis of the drum.

49. In defendant's 6–12 and 6–16 machines an oscillating arm is applied for the same purpose as in the Cloud '787 patent.

50. The operation of defendant's 6–12 and 6–16 machines is described in defendant's Mahaffy '828 patent.

51. While Pliofilm, a heat memory film, is the preferred material specified in the Cloud '787 patent, the method of this patent is not limited to the use of that particular film and the specification of the patent clearly points out in column 4, lines 33 to 38, and column 6, lines 43 to 52, that the invention includes the use of films which are to be heated at the time of sealing.

52. Claims 1, 2, 3 and 5 of the Cloud '059 patent are not limited to a finned heating roll and cover defendant's 6–12 and 6–16 machines and their use.

53. Each of the elements of claim 1 of Cloud '059 patent is incorporated in defendant's machines 6–12 and 6–16 and the claim covers these machines.

54. Each of the method steps of claims 2, 3 and 5 of Cloud '059 patent is used in the operation of defendant's machines and these claims cover such use.

55. The machines charged with patent infringement in this action are machines that have been put into wide commercial use by defendant during the last six years and are employed by food packers for wrapping food products, ready for sale in supermarkets and other retail food outlets, in a transparent, flexible and evacuated plastic package and from which machines defendant has gained profit.

56. Since several years before the visit of Mahaffy, defendant's engineer, to the Ostrow plant, defendant had established a market for flexible vacuum packages and had been supplying packers with machines and materials for packaging food products in such flexible vacuum packages. Such machines (defendant's models 6–5, 6–6, 6–7, 6–8 and 6–9) vacuum-sealed the food product in a preformed plastic pouch that was open at one end when fed to the machines and the machines did not form or shape the flat sheets from which the pouch was made. Such machines are still in wide use and none of them is charged by plaintiffs to infringe the patents in suit. None of such machines encroached upon the continuous roll fed vacuum packaging methods claimed by plaintiffs under Cloud '059 or '787 patents.

57. Defendant's accused packaging machines are modern, high-speed machines uniquely designed for use with high quality composite packaging films

that have been introduced and marketed in large quantities by defendant. These composite films (Mylar-based or nylon-based) are now in widespread use in the food industry for vacuum packaging cheese and processed meats, and defendant's vacuum packaging machines, specially adapted for such films, are in widespread use by packers who employ those films.

58. In all of the accused vacuum packaging machines, a web of formable plastic film is heated and fed to a series of cavities in which the film is stretched by vacuum in the shape of a pocket or tray. The food product is then introduced into the formed tray of the film and another web of plastic film is fed to cover the product while in the tray formed in the cavity. The webs in superimposed position and the product, still in the cavity, are advanced to a preliminary heat-sealing iron which by use of oscillating sealing and evacuating arms forms a heat seal between the webs on their flat surfaces surrounding the cavity leaving small, unsealed passages between the films, whereby at the next operating stage, air may be evacuated from the interior of the package which is still uncut from the web. The cavity is then advanced to an evacuation and final heat-sealing mechanism which evacuates the package and brings another heat-sealing iron into contact with the webs to seal the evacuation passages. The completed vacuum packages are then cut from the webs.

59. In defendant's machines, models 6–12 and 6–16, the cavities are spaced around a drum that, during operation of the machine, rotates continuously, that is, without stops and starts between the separate stages for web forming, web sealing, package evacuation, vacuum sealing and web cutting.

60. In defendant's model 6–14 machines, the cavities, when in operating position, are on the upper span of an endless conveyor belt and move intermittently, that is, the cavities stop successively at separate stations and cooperate with mechanism at each such station with the result that each of the steps in the production of the vacuum package is performed while the webs and the cavities are stationary.

61. The structure and detailed mechanisms of defendant's 6–12 and 6–16 machines are set forth in Mahaffy Patent No. 2,935,828.

62. The composite films employed in defendant's accused machines do not possess heat memory.

63. The Cloud '787 patent states that, if desired, heating devices at the points of stretching and sealing may be employed (column 4, lines 32–38).

64. The process and structure of the Cloud machine at the Ostrow plant was described in detail in the later filed Cloud '787 patent, including the oscilating suction head and continuously rotating drum and the scotch tape vacuum sealing system shown in Figures 12 to 16 of Cloud '787 patent.

65. All of the claims in issue of the Cloud '787 patent are limited to a packaging machine in which the air is evacuated from the packages by applying an evacuation head over the package. In defendant's 6–14 machine, the packages are evacuated through a web-separating pin from beneath the cups, and the vacuum head serves only to prevent air pressure above the cover web from collapsing the cover web against the pin. None of the claims of the Cloud '787 patent apply to defendant's 6–14 machine.

66. The Pfeiffer '760 patent discloses procedures for making an umbrella cover from stretched Pliofilm and for wrapping a food product, such as oranges, in stretched Pliofilm.

67. The procedure described in the Pfeiffer '760 patent for shaping a blank of Pliofilm to the form and size of an umbrella cover and then attaching it to an umbrella frame (illustrated in Figures 1 to 8) is not a procedure that is involved in this case. (Meroni opening statement, R. 71.)

68. The procedure illustrated in Figures 9 to 11 of the Pfeiffer '760 patent which uses vacuum for stretching and

shaping two heated sheets of Pliofilm in molds and then using air pressure for applying the sheets to and sealing and shrinking them around a spherical product, such as an orange is not followed in defendant's machines.

69. Claims 1 and 2 of the Pfeiffer '760 patent which describe a method of covering an object in a film which when unheated is substantially inelastic but which when heated becomes highly elastic, including the steps of heating the film to render it elastic, stretching the film while it is still elastic to conform to the shape of the object to be covered independently of the object, and then while the film is still elastic applying it in stretched condition to the object and securing thereon while it is still in its elastic condition are not infringed by defendant's machines.

70. Claim 3 of the Pfeiffer '760 patent describes a method of covering an object by heating a blank of heat-stretchable sheet material independently of an unheated mold to make it stretchable, anchoring the blank around the perimeter of the mold, stretching the heated blank into the unheated mold cavity independently of the object, and then attaching the blank in stretch-shaped condition to the object. Such method is not used in defendant's accused machines.

71. Claims 1, 2 and 3 of the Pfeiffer '760 patent describe processes which are not used in defendant's accused machines.

72. During the early 1950's and prior to 1955, defendant was the acknowledged leader in the field of flexible vacuum packaging and its vacuum packaging materials and machines were in wide use throughout the country.

73. In 1951, defendant was considering the feasibility of vacuum packaging luncheon meat in 3–D packages using an automatic vacuum packaging machine. The 3–D package then under consideration was substantially the same shape and size as the packages presently made on defendant's 6–12 machine.

74. The project which ultimately resulted in defendant's 6–12 prototype machine was begun in 1953 and assigned Project No. 221–53–060.

75. In 1954 defendant developed a Mylar-polyethylene packaging film for use in packaging luncheon meats and other food products. This film was available to defendant's customers in pouch form prior to April of 1955 and this composite film, as modified and improved from 1955 to 1957, is the film employed in defendant's accused machines and for which they were designed.

76. During 1954 defendant vacuum packaged luncheon meats experimentally in 3–D packages using its Mylar-polyethylene film and conducted a successful shipping test of some 200 of these packages but not following the methods set forth in Cloud '059 or '787 patents.

77. By the end of 1954 the development of a machine for making the 3–D vacuum package from roll stock and stretching the film by vacuum forming was the project having highest priority in defendant's engineering department.

78. Prior to Mahaffy's visit to the Ostrow plant on April 7, 1955 there had been no communication between defendant and any of the Clouds.

79. Mahaffy did not enter into and had no authority to enter into any confidential or contractual relationship with the Clouds as a condition to seeing the Cloud machine on April 7, 1955 at the Ostrow plant.

80. The Cloud machine and vacuum packaging process which Mahaffy saw at the Ostrow plant used Goodyear's Pliofilm and embodied the scotch tape sealing system illustrated in Figures 12 to 16 of the Cloud '787 patent.

81. Mahaffy advised Ostrow of the limitations of Pliofilm for the packaging of luncheon meats at their meeting on April 7, 1955, and Mahaffy advised Ostrow that he could not hold out any hope that existing films suitable for packaging luncheon meats would work on the Cloud machine.

82. On April 20, 1955 Mahaffy visited W. S. and Charles Cloud at the Cloud Machine Company between 9:05 and 11:35 a. m., during which they talked "mostly about films." During that visit the Clouds also took Mahaffy on a tour of their plant, showed him their drilling machines, lathes, and certain machines that they were in the process of constructing, and showed him a motion picture on orange wrapping machines. There was no vacuum packaging machine at the Cloud premises on April 20, 1955.

83. On October 19, 1955 Mahaffy reported to Dr. Keenan that "Ostrow wishes to have us develop a material which will be satisfactory for packaging meat products on the Cloud 3–D machine."

84. In 1955 the Clouds approached Goodyear, Dow Chemical, Milprint, Kraft Foods and others in their search for improved and better films for use on the Cloud machine at the Ostrow plant. The Clouds were not communicating exclusively with defendant and were not relying on defendant in their search for a more satisfactory film.

85. Plaintiff Cloud recognized that defendant's Mylar-polyethylene film then on the market would not work on the Cloud machine.

86. On January 20, 1956 Mahaffy invited the Clouds to visit defendant's new plant at Clifton and see defendant's film developing facilities. The Clouds did not accept Mahaffy's invitation.

87. On February 13, 1956 Charles Cloud wrote to Mahaffy as follows:

"Pliofilm does a wonderful job of stretching but for some items, such as green vegetables, it does not 'breathe' enough; while for other items such as frankfurters, it works on some but not on others.

"If you have, even on an experimental basis, any film that will stretch, even slightly, and that has characteristics somewhat different from Pliofilm, then we would be very happy to get a small sample of it with which to experiment. Pliofilm does not hold a vacuum unless you use two or more thicknesses and this makes it too expensive. We are experimenting with saran-coated Pliofilm and this shows promise. If you have anything along this line we would be interested in it." (Plaintiffs' Exhibit 65.)

Pursuant to the letter of February 13, 1956 from Cloud to Mahaffy, defendant sent samples of saran-coated polyethylene to the Clouds for use on the Cloud machine.

88. Defendant's saran-coated polyethylene film was thought by plaintiff Cloud to have promise, but the absence of sealing bars on the Cloud machine made it impossible to produce an effective seal.

89. In 1955 and 1956 plaintiff Cloud repeatedly told Mahaffy that he and/or plaintiff FMC Corporation owned or controlled the basic patents pertaining to "stretch wrap" machines, causing defendant to make searches for such patents.

90. In June of 1956 defendant's 6–12 prototype machine was delivered to the Jersey City plant of Armour & Company where it was tested during the succeeding months.

91. In October of 1956 and at the request of W. S. Cloud, defendant permitted plaintiff Cloud, representatives of the FMC Corporation and their attorneys to inspect the prototype of the accused 6–12 machine.

92. On January 29, 1957 plaintiffs gave notice charging defendant with infringement of the Pfeiffer '760 and Cloud '059 patents. On June 2, 1959 the Cloud '787 patent issued, and on July 21, 1959 the plaintiffs gave notice charging defendant with infringement of the Cloud '787 patent.

93. The complaint herein was filed September 25, 1960.

94. Defendant did not enter into any joint venture or any confidential or contractual relationship, express or implied, with plaintiff Cloud.

95.   Defendant, through its engineer Mahaffy, obtained information of the Cloud machine at the Ostrow plant on April 7, 1955 without making any commitment and subject to no conditions or restrictions.

## CONCLUSIONS OF LAW

Upon the foregoing Findings of Fact the Court concludes the law to be as follows:

1.   The Court has jurisdiction of the parties and subject matter of the issues of plaintiffs' complaint, including all amendments thereof.

2.   Under the evidence and under the statutory presumptions of validity I conclude that plaintiffs' Cloud '059 and '787 patents and Pfeiffer '760 patent are valid.   None of the claims of Patent '787 relied upon by plaintiffs is invalid for failure to point out particularly and distinctly claim the invention of said patent.

3.   Under the evidence I conclude that the plaintiffs have maintained their burden of proof as to the charge of infringement of Cloud '059 and '787 patents by defendant's machines 6–12 and 6–16 but not as to the Pfeiffer '760 patent; Cloud '059 and '787 patents are infringed by defendant's machines identified as 6–12 and 6–16 but not by defendant's machine identified as 6–14; that said Pfeiffer '760 patent has not been shown by the evidence to be infringed by any of defendant's accused machines;   that Pfeiffer Patents 2,486,759 and 2,486,761 were dismissed from the complaint by agreement in advance of trial.

4.   As to Cloud '059 patent, the patent and its claims 1, 2, 3 and 5 here in suit are found to have been and to be infringed by defendant's machines 6–12 and 6–16;   as to Cloud '787 patent, the patent and claims 8, 9, 10, 11, 14, 15, 16, 18, 19, 20, 21 and 22 here in suit are found to have been and to be infringed by defendant's machines 6–12 and 6–16; as to Pfeiffer '760 patent, I conclude that neither the patent nor any of its claims have been infringed by any of defendant's machines; as to defendant's machine 6–14, I conclude that it does not infringe any of plaintiffs' machines or patents or claims here in suit.

5.   Plaintiffs' cause of action for unfair competition is without merit.

6.   There was no joint venture or confidential relationship between defendant and any of the plaintiffs.   Defendant learned about the structure and process of Cloud's machine by seeing it in its experimental use at the plant of one of defendant's customers and without any fraud, false inducement or contractual commitment in connection therewith and subject to no conditions.

7.   Plaintiffs are entitled to an injunction against the defendant enjoining further infringement direct or contributory of each of the two Cloud '059 and '787 patents and to an accounting as provided for in the Federal Rules of Civil Procedure and to interest and costs.

8.   Every Finding of Fact which may be deemed to be a Conclusion of Law is hereby adopted as a Conclusion of Law.

## DECREE AND JUDGMENT

This cause coming on to be heard on the pleadings, the evidence, briefs and arguments of counsel, and the Court being fully advised in the premises finds that the plaintiffs have sustained their burden of proof as to a portion of their complaint and amendment thereof and are entitled to a portion of the relief prayed for therein as hereinafter set forth.

Wherefore, it is ordered, adjudged and decreed as follows:

1.   Plaintiffs' complaint is sustained as to the validity of Pfeiffer Patent 2,486,-760;   Pfeiffer Patents 2,486,759 and 2,-486,761 having, in advance of trial, been dismissed from the suit by agreement of the parties.

2.   United States Letters Patent 2,-546,059 of Cloud, and United States Letters Patent 2,888,787 of Cloud are valid and claims 1, 2, 3 and 5 of Cloud Patent 2,546,059 and claims 8, 9, 10, 11, 14, 15, 16, 18, 19, 20, 21 and 22 of Cloud Patent 2,888,787 are valid and have been and are being infringed by defendant

by its machines 6–12 and 6–16 but not by defendant's machine 6–14.

3. Plaintiffs' cause of action for unfair competition is without merit and is dismissed.

4. Plaintiffs are entitled to:

(a) An injunction against the defendant enjoining further infringement, direct or contributory of each of the two Cloud Patents 2,546,059 and 2,888,787 by defendant's machines 6–12 and 6–16 and to a judgment for an accounting, as provided for under the Federal Rules of Civil Procedure for profits, damages and costs with interest.